UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ERIK M. BREWITT,

                Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration,

                Defendant.

CASE NO. C09-5147RJB

REPORT AND RECOMMENDATION

Noted for October 30, 2009

This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). This matter has been briefed, and after reviewing the record, the undersigned recommends that the Court affirm the administration's decision.

## INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff, Erik Brewitt, was born in 1970. Plaintiff reported leaving home when he was fifteen years old, to live on the streets. Tr. 310. Despite drug abuse and consequent infection with HIV (Tr. 309), plaintiff graduated from high school and went to a university in Canada. Tr.

REPORT AND RECOMMENDATION - 1

311. Plaintiff reports having earned two bachelor degrees and a masters degree in culinary cuisine, forest technology, and environmental engineering, respectively. *Id.* Mr. Brewitt has worked as a cook, a ski instructor, and a tour bus driver. Tr. 310.

Plaintiff filed an application for SSI disability benefits on December 28, 2004. Tr. 66. The matter was assigned to an administrative law judge ("ALJ"), who held a hearing on September 25, 2007. Tr. 753-94. After considering the testimony and the record, the ALJ issued a decision on February 22, 2008, finding that plaintiff was not disabled. Tr. 13-28. The Administration's Appeals Council affirmed the ALJ's decision, and thus, the ALJ's findings and denial of Plaintiff's application for social security benefits is the administration's final decision, subject to judicial review. 20 C.F.R. §416.1481 (2008).

Plaintiff now seeks judicial review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff specifically argues: (i) the ALJ erred at step two in his assessment of plaintiff's severe impairments; (ii) the ALJ erred at step three in deciding whether plaintiff's impairments met or medically equaled the listing of impairments; (iii) the ALJ erred in his assessment of plaintiff's credibility and his residual functional capacity (RFC); and (iv) the ALJ's assessment at step five was in error.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 201 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th

Cir.1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. Id.

Plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment that has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

## DISCUSSION

### A. The ALJ Properly Assessed Plaintiff's Credibility

Plaintiff argues the ALJ failed to properly consider his statements and allegations of disabling symptoms. The ALJ discussed plaintiff's credibility in detail, and stated, "This case largely rests on the claimant's self report, which is unreliable." Tr. 23. Because credibility is a significant issue in this matter, the court will discuss it first.

Credibility determinations are particularly within the province of the ALJ. Andrews, 53 F.3d at 1043. Nevertheless, when an ALJ discredits a claimant's subjective symptom testimony,

REPORT AND RECOMMENDATION - 3

he must articulate specific and adequate reasons for doing so. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir.2006). The determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); Smolen, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir.1991) (*en banc*). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998);Smolen, 80 F.3d at 1284.

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989). When evaluating a claimant's credibility, however, the ALJ "must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints." Greger, 464 F.3d at 972 (internal quotation omitted). General findings are insufficient. Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284. The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness, inconsistencies in testimony or between her testimony and conduct, daily activities, work record, and the testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Smolen, 80 F.3d at 1284.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that his statements concerning the intensity, duration, and limiting effects of these symptoms were not entirely credible. Tr. 23. After reviewing the record, the undersigned finds the ALJ provided sufficient reasons to discredit plaintiff's allegations regarding the degree of severity of his symptoms.

Plaintiff indicated he had difficulty walking more than three blocks. Tr. 24, 81-93. He further claimed he had not done any hiking or fishing within the past two or three years. Tr. 23. Plaintiff testified at the hearing, which took place on September 25, 2007, that in the last three and a half years, he had not done any of those activities. Tr. 776, 780. The ALJ properly examined plaintiff's activities of daily living and social functioning to support the finding that plaintiff does not have any exertional limitations and that plaintiff's allegations suggesting greater limitations should be discredited.

The record supports the ALJ's findings, and it is inconsistent with plaintiff's testimony. For instance, in March 2006, plaintiff reported to his psychiatrist that he hiked several times a week, going five miles to and from a hot spring. Tr. 24, 568. In April 2006, plaintiff reported taking long hikes in the mountains up to 15-20 miles per day approximately three days per week. Tr. 24, 560. Plaintiff went skydiving, (Tr. 24, 549), helped remodel a house for a friend (Tr. 24, 512), and helped friends move with his pickup (Tr. 24, 498). The record does not support plaintiff's allegations of exertional limitations.

The ALJ properly found that plaintiff exaggerated his symptoms and reports to his medical providers. For example, plaintiff testified at the hearing that he had "full blown AIDS" and had lost 100 pounds in the last year and a half, "neither of which was true." Tr. 19, 23-24, 769. On April 20, 2007, his physician reported he weighed 258 pounds, which was considered

"stable"; he was "well-appearing" and "in no acute distress." Tr. 702. At the hearing, he testified to weighing 248 pounds. Tr. 769. On November 17, 2006, he had weighed 260 pounds, which was only four pounds less than his weight in July 2005; his physician indicated he was obese at 260 pounds and recommended he diet and exercise to lose weight. Tr. 620-21. Nina Kim, M.D., stated in an April 2007 report that plaintiff's HIV infection was well-controlled on current antiretroviral therapy, and he was asymptomatic and stable. Tr. 19, 702. A tendency to exaggerate is a legitimate consideration in determining credibility. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

Plaintiff also alleges disability, in part, on the basis of psychiatric impairments. However, as described above, plaintiff provided inconsistent statements throughout the record, and many inconsistencies are shown in plaintiff's reports to his mental health providers. "[T]he record is replete with inconsistencies in his self-report. This, is problematic since psychiatric diagnoses and treatment recommendations are largely based on a patient's self-report." Tr. 24. For instance, Plaintiff testified that he feared people; on his activity questionnaire, however, he reported that he did not feel afraid of people. Tr. 24, 91. He gave vastly different reports about whether he had attempted suicide and, if so, how many times. Tr. 24, 299, 311, 331.

The ALJ further noted that plaintiff's "reported difficulty dealing with people is also exaggerated given that he lives with his significant other, has friends, and attends church." Tr. 23-24, 25. Plaintiff also provided contradictory statements about his drug abuse. Tr. 24. Untruthfulness about substance abuse has been held a clear and convincing reason to reject a claimant's testimony. Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999). The ALJ reasonably concluded that Plaintiff's contradictory accounts showed that he was not truthful when describing his psychiatric history. Tr. 24.

REPORT AND RECOMMENDATION - 6

In sum, the court finds the ALJ's conclusion to discredit plaintiff's testimony and allegations of limitations with greater severity than those found by the ALJ properly supported by the record. The ALJ's determinations regarding plaintiff's credibility should not be disturbed by this court.

## B. *The ALJ Properly Evaluated Plaintiff's Alleged "Severe" Impairments*

Plaintiff alleges the ALJ should have found Plaintiff's HIV caused severe physical impairments. Plaintiff further alleges that the ALJ should have found bi-polar disorder and post traumatic stress disorder as additional severe mental impairments. Plaintiff specifically argues the ALJ did not properly consider the opinions of Dr. Grant, Dr. Frederick, and Dr. Spence at step two of the administrative review process.

Step two of the administration's evaluation process requires the ALJ to determine whether an impairment is severe or not severe. 20 C.F.R. §§ 404.1520, 416.920 (1996). An impairment is "not severe" if it does not "significantly limit" the ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step-two severity determination in terms of what is "not severe." According to the Commissioner's regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 404.1521(a)(1991). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. § 140.1521(b); Social Security Ruling 85-28 ("SSR 85-28"). An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on

an individual's ability to work." Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988)(*adopting SSR 85-28*).

Here, as discussed above, the ALJ did not find any severe physical or exertional limitations caused by plaintiff's HIV, obesity, asthma, back problems and sleep apnea. Tr. 20. The ALJ's findings are properly supported by the ALJ's analysis of plaintiff's credibility and the opinions of Dr. Turner and Dr. Spence. Each of these two physicians found no physical limitations would prevent plaintiff from working. The medical opinions and the ALJ's analysis of the medical evidence is discussed below.

The ALJ also properly considered plaintiff's alleged mental impairments and the related medical evidence. The ALJ stated, "The record contains a variety of psychiatric diagnosis including depression, bipolar disorder, and posttraumatic stress disorder ("PTSD"). After careful consideration, I find that the diagnosis of depression not otherwise specified best describes the claimant's affective disorder." Tr. 18. The ALJ rejected plaintiff's alleged posttraumatic stress disorder and bipolar disorder because these impairments were based on plaintiff's self reporting. *Id*.

Plaintiff's argument suggests that plaintiff suffered from three different and distinguishable mental impairments: depression, bipolar disorder and PTSD. The medical evidence, taken as a whole, does not support this theory. The ALJ properly considered the medical evidence, recognizing that plaintiff related several different answers to the mental health professionals at different periods of time and that the most reasonable affective order diagnosis was that of depression. The ALJ properly assigned certain limitations caused by plaintiff's mental health – his depression. As discussed above, the ALJ discredited plaintiff's allegations of disabling limitations, and also discounted the medical opinions, which relied most heavily on

REPORT AND RECOMMENDATION - 8

those subjective complaints. In sum, the ALJ properly found severe impairments caused by plaintiff's mental health at step-two, and the ALJ included those impairments in his assessment of plaintiff's residual functional capacity, discussed below. The court finds no error in the ALJ's rejection of including bipolar disorder and PTSD as impairments causing additional severe non-exertional limitations at step-two.

In sum, the ALJ properly considered the record and did not commit any legal error when he assessed plaintiff's "severe" impairments at step two of the administrative process.

## C. At Step Three, The ALJ Properly Found Plaintiff's Impairments, Or Combination Of Impairments, Did Not Meet Or Equal Any Of The Listed Impairments

Plaintiff argues the ALJ should have concluded that his impairments met or equaled the terms of Section 14.08 and Section 12.04 of the Listing of Impairments.

At step three of the administrative process, if the administration finds that the claimant has an impairment(s) which has lasted or can be expected to last for not less than 12 months, and is included in Appendix 1 of the Listings of Impairments, or is equal to a listed impairment(s), the claimant will be considered disabled without considering age, education and work experience. 20 C.F.R. § 404.1520(d). The claimant bears the burden of proving that he has an impairment that meets or equals the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (the Listings). Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2004).

Specifically, "[a]ny individual with HIV infection, including one with a diagnosis of acquired immunodeficiency syndrome (AIDS), may be found disabled under this listing if his or her impairment meets any of the criteria in 14.08 or is of equivalent severity to any impairment in 14.08." 20 C.F.R ., Pt. 404, Subpt. P, App. 1, § 14.00(D)(1). The most relevant Listing, 14.08(N), "requires proof of HIV infection and repeated manifestations of HIV infection resulting in significant, documented symptoms such as fatigue, fever, weight loss, night sweats

REPORT AND RECOMMENDATION - 9

and one of the following at a marked level: restrictions of daily activities, difficulties in maintaining social functioning, or difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence or pace." Gonzalez v. Barnhart, 491 F.Supp.2d 329, 335 n. 10, (W.D.N.Y. 2007) (*quoting* 20 C.F.R., Part 404, Subpt. P., App. 1, § 14.08N). A diagnosis of HIV alone is not enough to meet a 14.08 Listing; the HIV must be accompanied by the listed impairments at the severity described. *See e.g.*, Roman v. Barnhart, 477 F.Supp.2d 587, 598 (S.D.N.Y. 2007) (finding the Plaintiff not disabled due to HIV infection where accompanying impairments were "isolated incidents" rather than "chronic" ailments).

Here, the ALJ considered the medical evidence and concluded, "The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926)." Tr. 21. As discussed above, the ALJ properly concluded plaintiff did not suffer from any severe physical impairments due to his HIV. Dr. Kim found plaintiff's HIV infection was well controlled on current antiretroviral therapy, and he was asymptomatic and stable. Tr. 702. Dr. Spence specifically testified that plaintiff did not meet the criteria in paragraph N, except for one of the three listed limitations in Listing 14.08N at the marked level. Tr. 763.

Based on the above, the ALJ did not err as alleged, and the court is not persuaded by plaintiff's argument that the ALJ should have found plaintiff disabled under Section 14.08 of the listing of impairments.

The undersigned is similarly not persuaded by plaintiff's argument that the ALJ should have concluded he was disabled under Section 12.04 of the Listings. Listing 12.04 provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in

REPORT AND RECOMMENDATION - 10

two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement. 20 C.F.R. pt. 404, subpt. P, app. 1, listing 12.04.

The ALJ specifically discussed the lack of medical evidence to support the requirements of "paragraph B", finding that plaintiff's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation. Tr. 21. The ALJ explained that plaintiff had no more than mild restrictions, citing the fact that plaintiff was taking long hikes, skydiving, remodeling, traveling, and volunteering to help people move. *Id.*

Plaintiff's argument that the ALJ failed to properly consider section 12.04 is premised on the testimony of Dr. Spence, who plaintiff argues stated that his mental limitations satisfied all three (A, B, & C) criteria to satisfy Section 12.04 of the Listings. Plaintiff takes the testimpony of Dr. Spence completely out of context. Dr. Spence was addressing plaintiff's attorney's questions regarding section 14.08 and plaintiff limitations associated with HIV, when he arguably replied, "[U]nder one, two, and three, you got it" (Tr. 763). When read in its entirety, it is clear that Dr. Spence was referring only to section 14.08, and he testified that the medical

REPORT AND RECOMMENDATION - 11

evidence indicated that plaintiff did not meet the criteria in paragraph N, except for one of the three listed limitations in Listing 14.08N at the marked level. Tr. 763.

### D. The ALJ Properly Evaluated Plaintiff's Residual Functional Capacity

"[R]esidual functional capacity" (RFC) is "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c) (emphasis added). In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a). The regulations further specify: "When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis." Id. at § 404.1545(b). If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. 20 CFR § § 404.1527, 416.927.

Plaintiff's RFC was assessed by the ALJ as follows:

> After careful consideration of the entire record, I find that the claimant has no exertional restrictions. He can perform simple and routine tasks. The claimant can tolerate occasional contact with the public.

Tr. 22. In the process of assessing plaintiff's RFC, the ALJ evaluated plaintiff's credibility (discussed above) and the medical evidence. Tr. 22-26.

With regard to physical exertion, the ALJ relied on the activity reports of plaintiff to his medical providers and the opinions of Dr. Kim, Dr. Turner, and Dr. Spence. (Tr. 20). The ALJ rejected the opinions of Dr. Frederick and Dr. Grant. (Tr. 25-26).

A review of the medical evidence shows that it is inconsistent. The ALJ is entitled to resolve conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). The ALJ may not, however, substitute his or her own opinion for that of qualified

REPORT AND RECOMMENDATION - 12

medical experts. Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982). If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831. In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a non-examining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant that conflicted with the treating physician's opinion.

Here, the ALJ properly relied on substantial evidence in the record to support his findings regarding plaintiff's physical and mental limitations. For instance, the expert medical examiner, Dr. Spence, opined at the hearing on September 25, 2007, that plaintiff had no physical limitations. Tr. 756-65. The ALJ noted that given Plaintiff's activities, he accepted Dr. Spence's opinion that Plaintiff had no physical limitations. Tr. 21. Dr. Spence, a consulting physician, offered an opinion that completely supportive of Dr. Spence's conclusion. Tr. Tr. 143-50. As previously noted, Dr. Kim, a treating physician (Tr. 725) found plaintiff's HIV/AIDS stable, and she reported no physical limitations (noting that plaintiff kayaked 30 minutes a day). Tr. 702.

With respect to plaintiff's mental limitations, the ALJ wrote the following:

I accept that the claimant has depression which is likely the result of his HIV status. His complaints are exaggerated, but giving him the benefit of the doubt I will find that he is limited to simple and routine tasks. The claimant's reported difficulty dealing with people is also exaggerated given that he lives with his significant other, has friends, and attends church. However, treatment records

REPORT AND RECOMMENDATION - 13

show that he is irritable and for that reason I find he should perform work that entails no more than occasional contact with the general public.

In arriving at these conclusions I have assigned some weight to the opinion of Dr. Gregg. He opined that the claimant would follow one and two step instructions and maintain attention and concentration for up to two hours at a time. He opined that the claimant could accept direction form a supervisor, but would do best in a job where he did not have to work with the public (Exhibit #F). Given that the claimant reported attending church, helping a friend remodel a home, and volunteering to help people move, I conclude that he can tolerate occasional contact with the general public. I assign no weight to Dr. Dunlap's opinion that it was unlikely that the claimant can handle work responsibilities on a full-time basis at the present time (Exhibit 16Fp6). As noted by Dr. Gregg, this opinion appeared to be entirely based on the claimant's self report rather than objective findings. I assign no weight to Dr. Frederick's opinion since it is predicated, in large part, on the claimant's unreliable self report. Again, the claimant told Dr. Frederick that he was hospitalized numerous times for bipolar disorder, which is not supported by the documentary evidence. I note that the claimant can claim whatever psychiatric symptoms he feels will get him benefits and there is no objective evidence to show that he actually experiences these symptoms. Instead, it is necessary to rely on his self report, which is unreliable given the numerous inconsistencies in the record. I assign no weight to the functional limitations opined by Dr. Grant. He opined that the claimant was severely limited, which is entirely inconsistent with the claimant's description of taking 10 to 20 mile long hikes. Similarly, I assign no weight to the functional limitations Dr. Grant opined regarding the claimant's mental and emotional capabilities. I do not assign significant weight to the opinion of George Mastick, CDMHP, since he indicated the functional limitations he opined were based on the claimant's self report (Exhibit 14Fp4). I do not assign significant weight to the functional limitations opined by Dr. Lloyd since it is clear that the claimant attempted to portray himself as more limited than is actually the case as is evident from the invalid indicator profile and MMPI-II results.

I assign no weight to the written statements from James Spencer (Exhibit 5E). He reported that the claimant needed assistance with dressing and getting in and out of the bathtub. However, the evidence does not show that the claimant has any exertional limitations. Again the claimant reported taking 10 to 20 mile long hikes. Mr. Spencer lives with the claimant and has a financial interest in the outcome of this claim. I note that they were planning on moving to California if the claimant obtained SSI benefits (Exhibit 22Fp90).

Tr. 25-26.

The ALJ's analysis is properly supported by substantial evidence in the record. As discussed above, the ALJ properly discounted plaintiff's testimony and credibility. The ALJ properly relied on Dr. Gregg's mental health assessment, who found plaintiff would be able to work in a job that did not require contact with the public. Moreover, the ALJ gave specific and legitimate reasons to reject the medical opinions which suggested plaintiff was not able to perform any type of work. The ALJ accurately noted that many of these opinions were based almost entirely on plaintiff's inconsistent reports or claims. An ALJ is permitted to reject medical opinions that are based on discredited claims. Tonapetyan v. Halter, 242 F.3d 1144, 1449 (9th Cir.2001). The ALJ may also reject medical opinions that are inconsistent with reported activities. Morgan v. Commissioner, 169 F.3d 595, 602 (9th Cir.1999). Here, plaintiff's inconsistent reports and exaggerations of symptoms made to both the ALJ and to his medical providers, undermines any diagnosis or assessment made based in part on plaintiff's claims.

In sum, the ALJ properly considered the evidence, resolved several conflicts therein, and made a rational and reasonable decision. The ALJ did not err when he assessed plaintiff's RFC.

### E. *The ALJ Properly Completed Step Five Of The Administrative Process*

At step-five, the final step, of the administrative review process, the burden of proof shifts to the social security agency to demonstrate that "the claimant can perform a significant number of other jobs in the national economy." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir.2002). This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education. To assist in the step-five determination, the Social Security Administration established the Medical-Vocational Guidelines (the Grids), which "consist of a matrix of [the four factors] and set forth rules that identify

whether jobs requiring a specific combination of these factors exist in significant numbers in the national economy." Heckler v. Campbell, 461 U.S. 458, 461-62 (1983). When the Grids do not match the claimant's qualifications, the ALJ can either (1) use the Grids as a framework and make a determination of what work exists that the claimant can perform, *see* Soc. Sec. Ruling 83-14, or (2) rely on a vocational expert when the claimant has significant non-exertional limitations. Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 577 (9th Cir.1988).

Here the ALJ utilized the help of a vocational expert. Plaintiff claims that the ALJ's hypothetical questions to the vocational expert failed to include all of the limitations assigned by Dr. Dunlap, Dr. Grant, and Dr. Frederikc, which plaintiff posits are consistent with plaintiff's alleged severity of his symptoms and lay witness testimony. Plaintiff's Opening Brief at 26-27. Plaintiff's argument that the ALJ erred at step five is premised on the former arguments that the ALJ failed to properly credit plaintiff's testimony and failed to properly assess the medical evidence and plaintiff's RFC. As discussed above, the court found no error in the ALJ's consideration of the record. Accordingly, the undersigned finds no error in his reliance on the vocational expert testimony.

The hypothetical assumed an individual who "limited to simple, routine tasks and would only have occasional contact with the public." Tr. 789. The hypothetical accurately reflected plaintiff's limitations and RFC. The ALJ's RFC and hypothetical were properly supported by the record, and the vocational expert testified that such an individual would be capable of working as a housekeeping cleaner or a small products assembler. Tr. 27, 791-92.

The ALJ did not err in finding that plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

## **CONCLUSION**

Based on the foregoing discussion, the Court should affirm the administrative decision. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on October 30, 2009, as noted in the caption.

DATED this 9th day of October, 2009.

J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION - 17